<div style="float:right">
RAFEL
*v.*
NASHVILLE
MARINE AND
FIRE INS. CO.
</div>

policy, might require a special designation. But those words, as they are here used, are limited by the antecedent words, and cannot be considered as comprehending any other effects besides jewelry and clothing.

There was no attempt to show by evidence, that any peculiar meaning is attached to such a description by the usage of trade; and we are therefore left to construe the words according to their plain, ordinary and popular sense.

Testing the rights of the parties by this standard, we are quite unable to say that the terms "jewelry and clothing," include such articles as musical instruments, surgical instruments, guns, pistols, books, and many others that appear in the statement of loss.

Excluding the articles held in pawn, and those which cannot be classed either as jewelry or clothing, the loss sustained by the plaintiff is below the claim made by him under oath. The excessiveness of the claim over the real loss within the policy, was a fraud, it is said, which, under one of the conditions annexed to the policy, deprived the plaintiff of all recourse. This condition requires the assured who has sustained a loss, to deliver in a particular account of such loss or damage, under oath; and provides, that if there appear any fraud or false swearing, the insured shall forfeit all claim under the policy. To subject the plaintiff to this penalty, it should appear that the exaggeration of his claim was wilful and fraudulent. The plaintiff may well have thought he was covered for the goods held in pawn; and his mistake with regard to his legal rights, is not to be visited upon him as a fraud or perjury.

It is therefore decreed, that the judgment of the district court be reversed, and that this cause be remanded for a new trial; the costs of this appeal to be paid by the plaintiff.

---

## GEORGE LONGWORTH, PRAYING FOR A WRIT OF HABEAS CORPUS.

<div style="float:right">7 247<br>106 223</div>

A judge or court, authorized to issue a writ of *habeas corpus*, cannot refuse bail, by sufficient securities, except for capital offences, where the proof is evident or the presumption great. It is the constitutional right of the prisoner to demand it, and it is not in the discretion of the judge to deny it, nor does the conviction of the prisoner deprive him of the right.

APPEAL from the First District Court of New Orleans, *Larue*, J. *John R. Grymes*, for prisoner. By the court: *(Rost*, J., dissenting.)

PRESTON, J. The prisoner was prosecuted for larceny, convicted and sentenced to one year's imprisonment at hard labor in the penitentiary, and to pay the costs of prosecution. He took an appeal to the Supreme Court.

Immediately afterwards, he applied to the executive for a reprieve and pardon. A reprieve was granted by the governor for good and sufficient reasons, but upon the condition, that he should remain in the parish prison until the meeting of the next Legislature, in order that the sense of the Senate may be made known, as to their concurrence with the executive in a pardon.

The governor was obliged to prescribe this condition of his clemency, under a law passed at the late session of the general assembly, but as the Legislature may not meet for two years; the condition, except as to the ignominy, is more onerous than the punishment.

LONGWORTH,        The prisoner therefore applied to the district court to be discharged from
PRAYING FOR A
  WRIT OF        imprisonment, on giving bail to surrender his person at any time to be dealt with
HABEASCORPUS according to law.    The district court refused to bail him, because he was a
convict under sentence and could not be bailed, notwithstanding his appeal.

In the case of the *State* v. *Jones*, convicted of burglary, this court held that
the prisoner could be bailed pending an appeal although convicted.    The 108th
art. of the Constitution was cited as the basis of the opinion.    It prescribes, that
"all persons shall be bailable by sufficient sureties unless for capital offences,
where the proof is evident or presumption great."

But at that time the 10th section of an act approved the 30th of May, 1846,
was in force, which permitted the accused, if the offence was bailable, to be bailed
after conviction when an appeal was taken.

On the contrary, the general assembly have, at its recent session, expressly
enacted : "That in all cases where persons convicted of crimes shall be sen-
tenced to death or to imprisonment at hard labor, it shall be the duty of the
sheriff of the court where such sentence has been pronounced, immediately to
take such person into custody, and to keep such person confined in the parish
jail, notwithstanding any appeal or reprieve, until the final action of the Supreme
Court on the appeal, or the action of the Senate on the reprieve, shall have deter-
mined what disposition shall be made of the person so sentenced."

Notwithstanding this law, the prisoner has applied to this court for a writ of
*habeas corpus*, and asks to be discharged from imprisonment, on giving sufficient
bail, conditioned as offered to the district court.

His counsel insists that the act passed at the late session of the Legislature
conflicts with the 108th art. of the Constitution, and that he is not bound by it.
His application, therefore, imposes upon us the very serious duty of examining
the constitutionality of an act of the Legislature.    This is a painful duty under
any circumstances, and we feel the more reluctance in performing it on this
occasion, as we are fully impressed with the truth and weight of the observations
of the attorney general, that the construction we are obliged to give to the article
in the Constitution, may conflict with the best interest of society, by enabling a
wealthy criminal to escape justice by means of his property.

The convention in providing, by the 108th art. of the Constitution, for the liberty
of the citizen, though accused of crime, must have referred to the principles of
bail, in criminal cases, as they existed at the time of the adoption of the Consti-
tution.    It becomes necessary, therefore, by a thorough search to ascertain what
those principles were.

Blackstone in his commentaries says :    "It is agreed that the Court of King's
Bench, or any judge thereof, in time of vacation, may bail for any crime whatsoever,
be it treason, murder, or any other offence, according to the circumstances of
the case.    And herein, he adds, the wisdom of the law is very manifest, because
cases may arise where it would be hard and unjust to confine a man in prison
though accused even of the greatest offence."    In Coke's entries from 354 to
356 it will be seen, that the power to bail, even in cases of murder, was exercised
in the reign of Queen Elizabeth.    So Lord Mohan, found guilty of murder by
the coroner's inquest, in the reign of William and Mary, was bailed.    1 Salkeld's
R. 103.

Chief Justice Marshall declared, upon the trial of Colonel Burr, that the court
had power to bail a person indicted for treason according to its sound discretion.

Thus, prisoners accused of the most henious crimes have been bailed, the courts
or judges exercising, in each case, the utmost discretion of which they were

capable. And if the power to bail may be exercised as to the greatest crimes, of course it may be exercised as to crimes of a lower grade of guilt.

But the rule laid down by Bacon, title bail, letter D, and adopted by the district judge, that if a person be attainted of felony, or convicted thereof by verdict, general or special, or notoriously guilty of treason or manslaughter, &c., by his own confession or otherwise, he is not to be admitted to bail without some special motive to grant it, has always regulated the discretion of courts and judges at common law. Still there was the exercise of discretion without certain rules to guide it, which has ever been regarded with jealousy by a people tenacious of liberty.

The people of Louisiana have, therefore, by their Constitution, restrained the discretion of the judges and enlarged the liberty of the citizen, by declaring, " that all prisoners shall be bailable by sufficient securities, unless for capital offences, where the proof is evident or presumption great, and the privilege of the writ of *habeas corpus* shall not be suspended unless, when in cases of rebellion or invasion, the public safety may require it." Art. 108.

A judge or court authorized to issue a writ of *habeas corpus*, cannot therefore refuse bail by sufficient securities, except for capital offences, where the proof is evident or the presumption great. It is the constitutional right of the prisoner to demand it, and it is not in the discretion of the judge to deny it.

Does the conviction of the prisoner deprive him of this constitutional right? A conviction did not deprive the judges of the power to bail, according to their discretion, at common law. In England, a person improperly convicted was relieved, not by a new trial, but by the king's pardon, and no doubt might be bailed until the pardon could be obtained.

In many cases where persons were entitled to relief, they have been bailed by the judges after conviction. In Bacon's Abridgment, title, bail in criminal cases, it is laid down, that " a man convicted of felony upon evidence, by which it plainly appears to the court that he is not guilty of it, may be bailed."

In Strange's Reports, p. 9, in the case of *The King* v. *Bishop*, he was convicted of a libel and moved to be bailed, on the ground that he was in a bad state of health. The court said, as a punishment commensurate with his offence might endanger his life, we will bail him for the present.

In the same vol. p. 531, in the case of *The King* v. *Reader*, the defendant was convicted of keeping an ale house without a license, and was thereupon sentenced and committed for one month, as the act directed. After he had been in jail a fortnight, he brought a *certiorari*, and, upon the return of it, was admitted to bail, the court being of opinion that if the conviction was confirmed, they would commit him in execution for the remainder of the time.

In the case of *The King* v. *The Mayor of Saltash*, the defendant, who had been indicted and convicted of a riot, and was confined under sentence, was bailed, because he had brought a writ of error. 2 Shower's R. p. 96.

In the case of *Lisle*, he was indicted for the murder of *Richard Armstrong*, and was thereupon tried and convicted of manslaughter. The brother of *Armstrong* filed a bill of appeal of murder. *Lisle* prayed, but was not immediately admitted to the benefit of clergy. He thereupon moved that he might be bailed, which was opposed by *Armstrong* because he was found guilty of manslaughter, but the court bailed him to appear from day to day. The appeal of murder was subsequently dismissed, and he was surrendered by his bail and branded for the manslaughter of which he was convicted. Salkeld's R. p. 60. See also the case of *The King* v. *Elwell*, 2 Strange 794.

LONGWORTH,
PRAYING FOR A
WRIT OE
HABEAS CORPUS In many of the States of the Union, an appeal or writ of error is allowed by law to obtain relief from an improper conviction. Where that means of relief is accorded, until the appeal or writ of error can be tried, the party prosecuting it has often been bailed notwithstanding his conviction.

In the case of *The People of New York* v. *Croswell,* convicted of a libel upon the President of the United States, the prisoner was bailed by the Supreme Court of New York until his case could be heard by that court. 1 Cain's R. p. 148.

In the same vol. p. 72, *McNeil,* having been convicted of a conspiracy, was bailed by the Supreme Court of New York, until the record should be made up, to pronounce sentence.

At page 431 of 1 Wheeler's criminal cases, Recorder Riker mentions the case of *Mr. Barnwell,* who was indicted of manslaughter, pleaded guilty, and was continued under bail; and in the case then under his consideration, he held, that a person convicted by a magistrate of vagrancy might, upon affidavit disclosing the merits of his complaints, obtain a *certiorari,* and upon giving bail to abide the judgment of the Supreme Court, be entitled to his discharge.

In some States express provision is made by law, enabling convicts to give bail until their appeal or writ of error is tried. Thus, in Mississippi, "it is provided that in all cases not capital removed into the Supreme Court, the defendant shall enter into recognizance, to be approved by the judge of the circuit court, in which the prosecution is pending, in such sum as shall be directed by said court to appear before the Supreme Court at their next succeeding term, and abide the sentence or judgment which may be there pronounced against him." Revised Statutes of 1824, p. 138.

So in Massachusetts, the appellant is authorized to recognise to the Commonwealth, in such reasonable sums, and with sureties, as the Court of Common Pleas shall order, with condition to appear at the court appealed to, and there to prosecute his appeal and to abide the sentence of the court, &c. 2 Revised Statutes, p. 763.

Indeed, it is probable that a little research would show that, in most of the States where appeals or writs of error are allowed in criminal cases, similar relief is extended to prisoners either by statute or by the practice of their courts, by suspending the execution of the sentence and all the effects of conviction during the pendency of the appeal or writ of error; otherwise the hope of relief would be attended with certain evil, rendering its advantages doubtful.

There is nothing in the case of the *State of South Carolina* v. *Bryan Connor,* adverse to the prisoner's application. Being convicted of forgery, the Constitutional Court of South Carolina approved the refusal of the circuit court to admit a defendant to bail in a case so highly criminal; but admitted the necessity of an exercise of discretionary power, even after conviction, in cases of lower offences, to bail for the appearance of offenders at the Constitutional Court of Appeals, to abide the final sentence of the court. 2 Bay's Rep. 37. The common law doctrine, giving the judges a discretion, prevailed, because the principle above quoted from our Constitution was not contained in the Constitution or laws of South Carolina. That principle takes away all discretion, and leaves but a single distinction. Capital cases are not bailable after conviction, because the presumption of guilt is great; all other cases are bailable, because the Constitution makes them so, without distinguishing between *heinous* or lower offences, as to the right of giving bail.

But in the case of the *State v. Ward*, 2 Hawke's North Carolina Rep. p. 443, it was held, that after a conviction of an offence, not capital, and appeal to the Supreme Court, the prisoner is not entitled to be bailed as a matter of right; it is a question addressed to the sound discretion of the judge before whom the appeal is taken. And it is to be observed, that the Constitution of North Carolina contains the identical clause quoted from our Constitution. This, then, is a decision directly in point, against the application in the present case.

We cannot so interpret the clause in our Constitution, the words of which are plain, unambiguous and imperative, " that all prisoners shall be bailable, by sufficient securities, unless for capital offences." They are entitled to be bailed as a matter of right, and the judge has no discretion except in fixing the amount of the security.

It has been argued, that the conviction leaves no doubt of the guilt of the accused. That is not absolutely certain, since an appeal is allowed by the Constitution and laws of the State. But suppose the guilt certain, it is not more so than if an individual, accused of perjury or forgery, should voluntarily declare, in writing, under his signature, that he had committed the perjury or forgery of which he was accused ; and yet it will not be denied that our Constitution allows him, in such case, to be bailed until sentenced to punishment.

So in this case, the prisoner is not undergoing the sentence of the law for his crime, but is a prisoner awaiting the final determination of his case by the Supreme Court, to which the 63d article of the Constitution allows him an appeal.

The probability of an offender absconding, at least when the opinion of the Supreme Court is known to be adverse to him, has been much pressed in the argument. The argument has great weight against the provision in our Constitution, but while the provision exists the danger must be counteracted, as much as possible, by the amount of bail to be required. *Lisle*, as we have seen, who, convicted of manslaughter, was at large on bail, was surrendered in execution, and branded for his crime.

A judge cannot violate or abridge the right, under the Constitution, of prisoners to be bailed, in all except capital cases, until the final judgment of the law, condemning to merited punishment, shall shut the doors of this constitutional privilege upon them.

We adhere to the injunction of the Constitution the more readily, as probably this is the last case in which we shall be called upon to exercise the power of bailing after conviction; as the considerations urged by the attorney general will, no doubt, induce the coming convention to restrain the power to bail after conviction.

There are other considerations operating upon the court. The prisoner appears to be in bad health, and might perhaps be deprived, by death, of the executive clemency, if detained in the Parish Prison two years before he could enjoy it.

Further, we do not know the motives which induced the executive to reprieve him, but possibly they may be of such a character as to induce the governor to extend to him the reprieve, even if the judgment of the district court against him should be affirmed by this court, and although he should be under bail.

We are therefore of opinion, that the prisoner should be bailed; and as the district court considers the law we have examined, forbidding it, constitutional and conclusive upon him, we will bail him in the sum of five thousand dollars.

It is therefore ordered, adjudged and decreed, that the sheriff take good and sufficient surety from the prisoner, in the sum of five thousand dollars, condi-

LONGWORTH, PRAYING FOR A WRIT OF HABEAS CORPUS

LONGWORTH, tioned, that as he had been convicted of larceny, and sentenced to hard labor PRAYING FOR A WRIT OF HABEAS CORPUS for one year in the penitentiary by the First District Court of New Orleans, but had appealed to the Supreme Court, which appeal had not been tried; that when the decree of the Supreme Court in this case shall be made and duly certified to the said district court, the said *Longworth* shall appear from day to day in said district court, and there be ready to abide the further orders of the district court, and not depart without the leave of the court. It is further ordered, adjudged and decreed, that the bond be submitted to this court before the discharge of the prisoner, and afterwards be deposited with the clerk of the First District Court of New Orleans, for safe keeping; and thereupon, let the prisoner be discharged from custody.

Eustis, C. J. and Slidell, J. concurred.

Rost, J. dissenting. I adhere to the opinion of the Supreme Court of North Carolina, in the case of the *State* v. *Ward*, decided under a constitutional provision similar to ours, that after a conviction of an offence not capital, the prisoner is not entitled to be bailed as a matter of right, and that it is a matter adverse to the sound discretion of the court, before whom the appeal is taken.

Conceding that the Legislature could not take away that discretion, it has been exercised in the present case, and the application has been refused. I think we should not interfere.